

**U.S. Department of Justice**

Antitrust Division

---

*New York Office*

| | |
|---|---|
| *26 Federal Plaza* | *212/335-8000* |
| *Room 3630* | |
| *New York, New York 10278-0004* | *FAX 212/335-8023* |

September 14, 2022

**BY EMAIL**

Brian Spears, Esq.
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890
bspears@spearsmanning.com

Marc Siegel, Esq.
Farmer Brownstein Jaeger Goldstein
Klein & Siegel LLP
235 Montgomery St., Suite 835
San Francisco, CA 94104
msiegel@fbjgk.com

Guy Petrillo, Esq.
Petrillo Klein & Boxer LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
gpetrillo@pkbllp.com

Marc Weinstein, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 17th Floor
New York, NY 10004
marc.weinstein@hugheshubbard.com

Richard Albert, Esq.
Morvillo Abramowitz Grand Iason & Anello PC
565 Fifth Avenue
New York, NY 10017
ralbert@maglaw.com

Audrey A. Felsen, Esq.
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, CT 06905
afelsen@aol.com

      Re:    *United States v. Mahesh Patel et al.*
             Criminal No. 21-00220-VAB

Dear Counsel:

      I am writing to reiterate the government's request for Defendants' discovery disclosures under Federal Rule of Criminal Procedure 16(b) and Section (B) of the Local Rules of Criminal Procedure for the District of Connecticut, Standing Order on Discovery ("Standing Order"). These rules require Defendants to produce reciprocal discovery in their possession, custody or control 14 days after the government's initial disclosure. That date has long passed. The Defendants should make the required disclosures as soon as possible, including all documentary and expert disclosures relating to Defendants' purported ancillary restraint defense.

*Letter to Defendants' Counsel*
*September 14, 2022*
*Page 2 of 4*

Federal Rule of Criminal Procedure 16(b)(1) provides that, once the government complies with its disclosure requirements under Rule 16(a), each Defendant must produce reciprocal discovery to the government. Such discovery includes, among other things, "books, papers, documents [and] data" in the defendant's possession that he "intends to use … in the defendant's case-in-chief at trial," as well as "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Fed. R. Crim. P. 16(b)(1)(A), (C). The Standing Order requires Defendants to make these disclosures "within 14 days after the attorney for the government provides the discovery required by Paragraph A."

As you know, the government began making its discovery disclosures in this case on January 20, 2022 and, to date, has produced over 710,000 documents to Defendants. This discovery includes, among other things, voluminous email communications and other documents received from third parties, notes of interviews of potential witnesses and victims, and relevant grand jury transcripts and exhibits. The government has also disclosed to Defendants, pursuant to Rule 16(a)(1)(G), that it does not intend to use expert testimony pursuant to Rules 702, 703, or 705 in its case-in-chief. In other words, the government has complied fully with its discovery obligations to date and continues to make disclosures as it becomes aware of additional discoverable information.

Despite the government's repeated written requests for reciprocal discovery under Rule 16(b) and the Standing Order, we have received not a single document from any of the Defendants. Only one Defendant has even responded to the government's requests for disclosure, stating that he had nothing to disclose. Defendants' continued silence on the issue of discovery is of great concern, particularly in light of their recently-filed motion to dismiss, which raises and argues a factually-intensive ancillary restraint defense. Defendants base their purported defense on numerous factual premises, including the following:

- "The outsourcing business model described in the Indictment, including the alleged no-poach term, facilitated the productive output of Company A[.]" (Mot. to Dismiss at 18)

- The alleged no-poach agreement "afford[ed] Company A increased control over the planning and execution of projects and delivery cycles and flexibility in the management of its labor expense." (*Id.*)

- "The alleged agreements enhanced interbrand competition between Company A and rival jet engine manufacturers and thus promoted economic efficiency." (*Id.*)

- "With respect to outsource service providers, the alleged no-poach agreement, inter alia, made it more practicable to complete contracted-for tasks on a timely basis; supported Company A's ability to make commitments to future projects;

*Letter to Defendants' Counsel*
*September 14, 2022*
*Page 3 of 4*

- allowed for the recoupment of training and recruitment costs; and mitigated the risk of 'disintermediation' between a customer and supplier …." (*Id.* at 18-19)

- "Because of the significant costs incurred when a trained employee is hired by a competitor, including lost training investment, loss of proprietary information, and costs of training a substitute, some restrictions on employee attrition are often necessary for firms to invest efficiently in human capital, and enable training 'that otherwise would not take place.'" (*Id.* at 24)

- "[I]t is reasonable for the purchaser to seek to avoid the disruption and delay associated with transfers of employees between outsource firms within the purchaser's project-support 'ecosystem.'" (*Id.*)

- "[A]n outsource supplier, particularly in the specialized industry in which Company A operates, would reasonably seek to avoid spending significant time and money on training employees to work on Company A's projects, only to see another outsource firm or Company A hire away its trained personnel to continue to perform work on Company A's projects." (*Id.* at 24-25)

- "Hiring restrictions…promote consistent staffing, allowing the outsource vendor to commit to performing the contracted-for services, and incentivize the outsource firms to invest in recruitment and training." (*Id.* at 25)

- "[N]o-poach agreements permit collaboration between firms who would not risk 'cutting [their] own throat[s]' by entering into such arrangements 'unless [they] had received assurances that [the other party] would not compete' by free-riding on their investment in human capital." (*Id.*)

- "Where, in the outsourcing context, training is specific to the outsourcing client and is valuable to other outsourcing firms servicing the common client, the risk is enhanced that outsourcing firms will try to free ride by hiring away competitors' employees who have experience and training tailored to their common customer." (*Id.* at 26)

- "Hiring restrictions in such a setting foster investment by allowing employers to recoup their investment in 'training related to the brand,' which would otherwise be subject to 'free riding' by 'other outlets' servicing that same brand." (*Id.* at 27)

- "[B]ecause a staffing or outsourcing firm's business model is based on its ability to serve as a middleman, preventing disintermediation or poaching of employees by a competitor 'is essential to its very existence' and 'business model.'" (*Id.*)

*Letter to Defendants' Counsel*
*September 14, 2022*
*Page 4 of 4*

- The business relationships alleged in the Indictment constitute a "singular commercial collaboration." (Reply Br. at 27)

Given Defendants' apparent intent to raise an ancillary restraint defense at trial, the government is entitled to (1) all documents and data relating to any aspect of that defense that Defendants intend to use at trial, including any of the above-noted factual assertions, and (2) a summary of any expert testimony defendants intend to offer at trial, including testimony relating to any of the above-noted factual assertions. If Defendants have no such documents or data in their possession, and/or do not intend to rely on any expert testimony, they must affirmatively disclose that information to the government. *See United States v. Rajaratnam*, No. S2 09 CR. 1184 RJH, 2011 WL 723530, at *2-5 (S.D.N.Y. Feb. 25, 2011) (granting government's motion for reciprocal expert disclosures under Rule 16(b)(1)(C) and holding that such required disclosures include an intent *not* to call an expert). Please note that the government's request in this letter, which is focused primarily on the ancillary restraint defense raised in Defendants' motion to dismiss, also encompasses any other discovery required to be made under Rule 16(b) and the Standing Order and which the government has requested since January 2022.

The government is hopeful that this discovery matter can be resolved without resorting to court intervention. Please let us know by September 23, 2022 whether Defendants intend to provide the requested disclosures and when.

Sincerely,

*T. Jakob Sebrow*

T. Jakob Sebrow
Trial Attorney
New York Office, Antitrust Division
(202) 644-3381